IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Lewis T. Babcock, Chief Judge

Civil Action No. 06-cv-02374-LTB-CBS

JOHN MAUPIN,

    Plaintiff,

v.

STACEY PRAY; WILLIAM SAMUDIO; DAWN GIBSON; T. J. BLAIR; DAN ANDREWS; JEFF SANGER; GERALD WHITMAN, Chief of Police of the City and County of Denver; and THE CITY AND COUNTY OF DENVER,

    Defendants.

_____

ORDER
_____

    The defendants, law enforcement officers, move in separate motions for dismissal of the second claim, for negligence, of the plaintiff, John Maupin. T. J. Blair, Dan Andrews, Jeff Sanger, Gerald Whitman, and the City and County of Denver (collectively, the "Denver Defendants") move for dismissal on the ground that they enjoy immunity under the Colorado Governmental Immunity Act, Colo. Rev. Stat. § 24-10-101 *et seq.* ("Immunity Act"). Stacey Pray, William Samudio, and Dawn Gibson move for dismissal under the Immunity Act and additionally argue that the second claim is barred by statute of limitations and is duplicative of the first claim stated in the Complaint. The motions are adequately briefed and oral argument would not materially aid their resolution. For the reasons stated below, I GRANT both motions and DISMISS the second claim.

## I. Allegations

The allegations of the Complaint are substantially the following, read in the light most favorable to Mr. Maupin. In the evening of June 29, 2005, the defendants searched in Mr. Maupin's neighborhood for a parole violator, Michael Ratchford, with whom Mr. Maupin has no acquaintance. Equipped with intelligence that the quarry was located at 36th and Madison Streets in Denver, the defendants forcibly entered Mr. Maupin's house, located at 3435 Bruce Randolph Drive. The defendants did not possess a warrant to enter Mr. Maupin's home.

Mr. Maupin arrived home to find the defendants in and around his home. When Mr. Maupin demanded to see a warrant, the officers produced a "parole wanted notice." Officer Gibson and Sargent Blair questioned Mr. Maupin concerning contents of his home and the suspected presence of the delinquent parolee. A special weapons and tactics team ("SWAT Team") arrived on the scene and requested permission to search Mr. Maupin's basement, which Mr. Maupin provided. After approximately two hours, the officers left. Mr. Maupin entered his house to find his belongings disturbed and damaged.

Mr. Maupin asserts two claims – violation of his constitutional rights, actionable under 42 U.S.C. § 1983, and negligence. His negligence claim is predicated upon the defendants' failure to exercise reasonable care not to tread upon his constitutionally-protected liberty.

## II. Factual record

Mr. Maupin supplements the pleadings with both an affidavit, in which he summarizes a report written by Sargent Blair, and excerpts from an Investigative Summary produced by the Colorado Department of Corrections, Office of the Inspector General. The defendants have not responded with evidence or affidavits bearing on the immunity question, instead relying solely on

the pleadings.

In his affidavit, Mr. Maupin avers that he read a report, to which he does not now have access, in which Sargent Blair recounted the events complained of. In Mr. Maupin's recollection, the report states that unspecified Denver Police Department ("DPD") officers expressed concern that they lacked authority to enter Mr. Maupin's home but entered after the defendant William Samudio, a supervisor in the Colorado Department of Corrections ("CDC"), instructed them to proceed.

I have only those portions of the Investigative Summary that Mr. Maupin has provided. Those excerpts disclose that Officer Gibson of the CDC on June 29, 2005 obtained intelligence siting Mr. Ratchford, the defaulted parolee, at "3435 Madison" Street in Denver. Officer Gibson passed this information to her supervisor, Officer Samudio. Officers Pray and Gibson, with another CDC officer, then summoned DPD officers to a park at 36th and Madison, near the target address, from which they would stage the intended arrest. Upon arrival, one of the DPD officers expressed confusion concerning the location of 3435 Madison Street, stating, "There isn't a 3435 Madison exactly, but [Mr. Maupin's house] is the 3435 Madison." Investigative Summary, 3.

According to the Investigative Summary, Mr. Maupin's house is located at the corner of Madison Street and Bruce Randolph Avenue, which abuts the block of Madison Street in which buildings are numbered in the 3400s. Though the number on Mr. Maupin's residence corresponds to Bruce Randolph Avenue, the door of Mr. Maupin's residence opens onto Madison Street. Moreover, no other building bears the address 3435 Madison Street. The Investigative Summary concludes, "It may be considered Parole Officers searched the right residence for the address provided based in the information CPO Gibson obtained."

3

The defendants knocked on the door to Mr. Maupin's house and announced their presence. A wavered window curtain, movement of the door lock, and cessation of barking from dogs that the defendants had heard inside the house aroused suspicion that a person inside the house was attempting to avoid detection. Officer Pray then contacted Officer Samudio, who authorized forced entry into the house.

The Investigative Summary indicates that the defendants were given inaccurate information and that the residence they sought was located at 26th and Madison Streets. It states, "No nexus was established between John Maupin or his address to Michael Ratchford." Investigative Summary, 10.

### III. Immunity Act

Section 24-10-1-5 of the Immunity Act provides, *inter alia*, "[N]o public employee shall be liable for injuries arising out of an act or omission occurring during the performance of his duties and within the scope of his employment, unless such act or omission was willful and wanton, except as provided in this article." Section 24-10-106 further provides, *inter alia*,

> (1) A public entity shall be immune from liability in all claims for injury which lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by the claimant except as provided otherwise in this section. Sovereign immunity is waived by a public entity in an action for injuries resulting from [*inter alia*]... (b) The operation of any public hospital, correctional facility, as defined in section 17-1-102, C.R.S., or jail by such public entity... .
>
> (2) Nothing in this section... shall be construed to constitute a waiver of sovereign immunity where the injury arises from the act, or failure to act, of a public employee where the act is the type of act for which the public employee would be or heretofore has been personally immune from liability.

A motion to dismiss invoking the Immunity Act raises a jurisdictional issue. Rule 12(b)(1) empowers a court to dismiss a complaint for "lack of jurisdiction over the subject matter." Fed.

R. Civ. P. 12(b)(1). As courts of limited jurisdiction, federal courts may only adjudicate cases that the Constitution and Congress have granted them authority to hear. *See* U.S. Const. art. III, § 2; *Morris v. City of Hobart*, 39 F.3d 1105, 1110 (10th Cir. 1994). Because federal courts are courts of limited jurisdiction, there is a presumption against our jurisdiction, and the party invoking federal jurisdiction bears the burden of proof. *Penteco Corp. Ltd. Partnership – 1985A v. Union Gas System, Inc.*, 929 F.2d 1519, 1521 (10th Cir. 1991).

Mr. Maupin bears the burden of demonstrating jurisdiction over the second claim in spite of the protection the defendants enjoy under the Immunity Act. *Padilla ex rel. Padilla v. School Dist. No. 1 in City and County of Denver*, 25 P.3d 1176, 1180 (Colo. 2001); *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). I am charged with resolving any factual questions arising from application of the Immunity Act. *Padilla*, 25 P.3d at 1180; *Maestas v. Lujan*, 351 F.3d 1001, 1016 (10th Cir. 2003).

### A.     No wilful or wanton conduct

The facts here are undisputed. Whatever negligence contributed to the defendants' misadventure on Mr. Maupin's property, the allegations of the Complaint, taken together with the evidentiary materials Mr. Maupin provided, raise no prospect of wilful or wanton conduct. As the CDC Investigative Summary demonstrates, the officers, hot on the trail of a delinquent parolee, regrettably but understandably intruded into the wrong house. Immunity attaches.

Mr. Maupin argues that his complaint lacks allegations of wilful and wanton conduct because he is bound by the strictures of Colo. Rev. Stat. § 13-21-102(1.5)(a), which permits plaintiffs to add claims for exemplary damages by amendment to the pleadings only after the exchange of initial disclosures, and only if "the plaintiff establishes prima facie proof of a triable

5

issue." This argument is specious, for two reasons. First, contrary to Mr. Maupin's protestation, his Complaint already contains a demand for punitive and exemplary damages. Second, nothing in the statute prohibits Mr. Maupin from making factual allegations that demonstrate wilful and wanton conduct. The statute prohibits the initial assertion of claims for a particular type of damages, not the statement of facts known to the plaintiff at the time he files the Complaint.

### B. Not the operation of a correctional facility

Mr. Maupin next argues that the defendants were performing the operation of a correctional facility within the meaning of Colo. Rev. Stat. § 24-10-106(1)(b), and are thus not entitled to immunity. However, nothing in the Complaint indicates that the defendants were exercising or performing the powers, duties, and functions that serve the purposes of a correctional facility. Colo. Rev. Stat. § 24-10-103(3)(a); *Howard Through Young v. City and County of Denver*, 837 P.2d 255, 257 (Colo. Ct. App. 1992); *Pack v. Arkansas Valley Correctional Facility*, 894 P.2d 34, 37 (Colo. Ct. App. 1995).

Mr. Ratchford is alleged to have been on parole and thus not confined in a correctional facility. *See*, *Pack*, 894 P.2d at 37 ("The primary purpose of a correctional facility is to confine safely and effectively, for the duration of their sentence, persons convicted of crimes. ... Further,... the powers, duties, and functions incidental to that purpose relate to the custodial nature of the prison and generally are confined to the custodial facility itself.").

Accordingly, the motions of the defendants to dismiss the second claim for relief [11, 14] are GRANTED and the second claim is DISMISSED.

Dated: March  29 , 2007 in Denver, Colorado.

                                              BY THE COURT:

                                                s/Lewis T. Babcock
                                              Lewis T. Babcock, Chief Judge